JOHN D. VOORHEES v. THE MAYOR AND COUNCIL OF THE. BOROUGH OF BOUND BROOK.

It is the settled law of this state that the determination of the boundaries of a street requires action of a judicial nature to ascertain the precise character and extent of the encroachments, and that parties to be affected by the adjudication have a right to be heard.

On *certiorari*.

For the prosecutor, *Henry C. Suydam* and *James J. Bergen*.

For the defendants, *Frederick C. Marsh*.

Argued at February Term, 1893, before Justices VAN SYCKEL and GARRISON.

The opinion of the court was delivered by

GARRISON, J.  It is the settled law of this state that the determination of the boundaries of a street requires action of a judicial nature to ascertain the precise character and extent of the encroachments, and that parties to be affected by the adjudication have a right to be heard.  Furthermore, that this judicial function must be assumed and exercised by the proper municipal body with special reference to the particular street affected, and a mode must be provided in which the adjacent lotowners may be heard.  *Bodine* v. *Trenton,* 7 *Vroom* 198; *Dawes* v. *Hightstown,* 16 *Id.* 127, 501; *Stretch* v. *Hoboken,* 18 *Id.* 268.

In the case before us, the facts are that Mountain avenue, now one of the streets of the borough of Bound Brook, was laid out as a public road in 1837.  The recorded return of the surveyors of highways calls for a three-rod road, but the road was originally opened and worked as a two-rod road only, and in this condition was included within the limits of the borough of Bound Brook, and has so remained to the present time, save in so far as individual landowners have shifted their fences or done other acts not resting upon municipal authority. In this condition of affairs, and with the true centre line of Mountain avenue a matter of doubt and dispute, the borough, in the fall of 1891, engaged Mr. Judd, a civil engineer, to prepare for it a map showing the boundaries for the several streets of the borough and also to lay down a scheme of grades based thereon.  The year following, in order to render effective a system of improvement based upon this map and survey, the two ordinances were passed that form the subject of the present controversy.  These enactments concern the establishment of the boundaries of the streets of the borough and direct the working of the streets by the lines thus established to a prescribed grade within thirty days, under penalty of having the work done at the owner's cost by the borough authorities.  For all purposes, these ordinances refer to the Judd map as conclusive upon the landowner.

The prosecutor is the owner of a lot of land with an ancient dwelling on it, so situated with respect to Mountain avenue that the line established by the Judd map not only takes several feet of his enclosed land, but also a portion of the structure erected thereon. It is admitted that the prosecutor did not participate in the making of the Judd map and that he had no notice of the ordinance by which his lands are subjected to the lines established by it. On the contrary, he has presented, under this writ, considerable testimony and some argument that will be directly pertinent to the contested matters when the opportunity for contest shall be afforded him by those charged with the duty of establishing the lines in question. That duty, as has been said, requires special action by the borough council, as to which the prosecutor shall have notice and a reasonable opportunity to be heard. The case is not one where recent or well-defined boundaries have been perceptibly altered or encroached upon, and hence fall under the police powers of the borough. There is here honest room for investigation. So far as the return of 1840 is concerned, the boundaries of the road thereby laid stand as if the road had not been opened at all. In other words, they are yet to be ascertained by judicial consideration—a consideration that cannot be delegated even to a ministerial officer of the municipality, still less settled by means of a map made by an employe.

Moreover, the acts of 1887 (*Pamph. L., p.* 126) and 1888 (*Pamph. L., p.* 226), as pointed out by Werts, J., in *Re Public Road,* 25 *Vroom* 539, specifically apply to Bound Brook and require notice to be given of the making of ordinances establishing the grades of streets and highways; so that, whether we regard general principles or the positive law, the ordinances in question must be set aside, in order that the boundaries of Mountain avenue may be established in accordance with the rules above indicated, with costs to the prosecutor.